No. 2297.—POLICE JURY, PARISH OF JEFFERSON, RIGHT BANK, v. J. J. TARDOS.

The act of the Legislature approved February 17th, 1866, confirming the appointment of a Board of Levee Commissioners which had been previously made by the Governor, and authorizing the appointment of others, when their terms of office expired, repealed all former laws authorizing the parochial authorities to construct levees at the cost and expense of the front and riparian proprietors of the lands leveed.

After the passage of the act of seventeenth of February, 1866, the parish can not force the front proprietor to pay the cost of the levee which she has ordered to be constructed along his front line.

The repeal of a repealing clause does not revive the act repealed.

APPEAL from Second Judicial District. Chas. B. Singleton, J. ad hoc. Bradford, Lea & Finney, for plaintiff and appellant. Edward D. White, for defendant and appellee.

TALIAFERRO, J. The police jury of the parish of Jefferson, right bank, sues the defendant to recover $17,526 60 expended by that parish, as alleged, in constructing a new levee on the margin of the Mississippi river in front of the defendant's plantation. The plaintiff prays recognition and enforcement of the lien and privilege accorded by law upon the land for the construction and repairs of levees made by the parish at the expense of the proprietor.

The answer denies the right of the plaintiff to require from him pay-ment for the work alleged to have been done in the construction of a new levee on his land. He denies the alleged necessity of the work; avers that he is not owner of the entire tract of land alleged to have

been leveed by the parish of Jefferson; that the work was not done in compliance with the requirements of law and the terms upon which the adjudication of the alleged contract was made.

There was judgment in favor of the defendant, and the plaintiff has appealed.

Prior to an act of the Legislature approved February 17, 1866, entitled "An Act to confirm and ratify the appointment of levee commissioners provisionally made by the Governor of the State, and to continue their functions," front proprietors on the Mississippi river were required to construct the necessary levees and embankments along their front lines on the margin of the river at their own cost; and in default thereof, the required work might be done at their expense by the parochial authorities.

It will be necessary in the investigation of this case to inquire, whether the act of seventeenth February, 1866, repeals the former laws in relation to the obligation of the front or riparian proprietors to construct at their own cost the necessary levees on their lands; and to consider the question raised by the pleadings, whether the act of February 17, 1866, was enacted for a special and temporary purpose, and expired in March, 1867, or whether it continued, and is still in force.

It seems that in 1865 the Governor of the State, appreciating the importance of immediate repairs of the levees, and in some instances of constructing new ones, appointed a board of levee commissioners to superintend the subject. As this act was done under the exigencies of the time, just after the close of the war, during which the levees on the Mississippi had been much broken down and damaged, it was deemed necessary for the Legislature, when it assembled, to ratify the Governor's action in the matter, which was without legal authority.

The act recites (section second): "That the said levee commissioners are authorized and empowered to continue their functions until superseded by such levee commissioners as may be established by law, or until otherwise ordered by the Legislature, provided the term of office of said commissioners shall expire at the end of the next regular session of the Legislature."

It is contended that this act merely ratified the Governor's appointment of commissioners, and that it had its effect and expired at the end of the next regular session of the Legislature. On the other hand, it is argued that the act established a continuous board of levee commissioners, the individual members of which might be changed, and their term of office from time to time expire.

This latter view of the question we are inclined to adopt. The Legislature might, at any time previous to the end of its next regular session, have superseded the first appointment of commissioners by appointing their successors, and it does not follow, had it thought proper to do so, that the last appointees would have become *functus*

*officio* at the time fixed for the expiration of the term of office of the first board. The act declared that the persons appointed by the Governor should go out of office at a stated time, if not otherwise previously provided for; but it does not declare that other commissioners should not be appointed and hold their office beyond the term fixed for the duration of office of the first commissioners. In this opinion we think we are sustained by the contemporaneous and subsequent construction of the act.

The Legislature adjourned in 1867 without having taken any action on the subject. Governor Wells, after the adjournment, proceeded to appoint another set of commissioners. These were removed by order of General Sheridan, and afterwards other commissioners were appointed by Governor Flanders, with the sanction of the military authority. The act of the Legislature of the twenty-sixth of March, 1867, authorizing the issuing of bonds to the amount of four millions of dollars for levee purposes, prescribes various duties to be performed by "the board of levee commissioners," recognizing thereby the existence of such a board, and looking to a continuance of a board of that character for an indefinite period. The Legislature was on the eve of adjournment when this act passed. The term of office of the first board expired in a few days afterwards. It was impossible that that board of commissioners was looked to, to perform duties which could only be performed months and years afterwards. It seems clear that the Legislative and executive branches of the State Government, as well as the military commander, looked to the act of the seventeenth of February, 1866, as continuing in force after the adjournment of the Legislature at the end of March, 1867

That act provides that "the said board of levee commissioners shall have the full power to let out the contracts for the building and repairs of all levees in the State which, in their judgment are necessary to protect the alluvial lands from being overflowed. They shall have the entire control and management of the levees let out by them, with the power to prescribe and regulate the dimensions and specifications of the levees to be built," etc. The eighth and last clause provides: "That all laws contrary to the provisions of this act be and the same are hereby repealed."

By act of the Legislature of March 26, 1867, seven hundred thousand dollars were appropriated to defray the expenses of building levees in accordance with contracts made with the levee commissioners.

The former laws, then, requiring the riparian owners to build levees, were repealed by the act of February 17, 1866. Even had that act expired in March, 1867, the laws relating to levees prior to its passage and contrary to its provisions, would not now be in force, unless reinstated by later legislation; for the repeal of a repealing law does not revive the first act. We do not see that any re-enactment of these laws has been made.

The order of General Sheridan, under date of August 30, 1867, in regard to levees, directs the levee inspectors to notify the riparian proprietors to repair and strengthen their levees, and a correct account to be kept of all the expenses of repairs of levees and of constructing new ones, to the end that all work of that kind should be paid for out of the proceeds of the levee bonds issued for that purpose. The spirit and true intent of that order appears to be in consonance with the existing laws of the State, especially in its controlling features, and should not be construed as intending to revive the former laws in regard to the obligation of the riparian owners to build and keep in repair the levees on their lands at their own cost.

The legislation on the subject of levees since the late war has manifestly been framed with reference to the great changes which have been wrought in the condition of the country by the late war. The vast expense formerly imposed upon the riparian proprietors of building the heavy embankments necessary on the Mississippi, and to make continuous repairs upon them, would now, under the altered state of affairs in regard to capital and labor, be utterly ruinous. Hence the policy was a wise one to relieve that class of our people by a change of the laws and regulations in respect to the levee system.

The parish of Jefferson, the plaintiff in this case, appears to have acted in good faith in the matter of constructing the levee on the defendant's land, and having done a work of public benefit, might reasonably expect to be remunerated for it, but we do not think the law will authorize it to coerce payment of this large demand from the defendant.

The able and very thorough investigation of the subject by the judge *ad hoc* (the judge of the district being recused), has materially aided us in arriving at the conclusions we have made, and we concur fully in the judgment rendered by him.

It is therefore ordered, adjudged and decreed that the judgment of the District Court be affirmed, with costs in both courts.

Justice Wyly and Justice Howell absent.